United States District Court
Southern District of Texas

**ENTERED**

December 05, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OMAR IBRAHIM, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-0755 |
| | § | |
| LORIE DAVIS, DIRECTOR, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 11) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered Respondent's Motion for Summary Judgment, Petitioner's Traverse in response (Document No. 18), the claims raised by Petitioner in his § 2254 Application, the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 11) be GRANTED, that Petitioner's Federal Application for Writ of Habeas Corpus (Document Nos. 1) be DENIED, and that this case be DISMISSED WITH PREJUDICE.

I.      **Introduction and Procedural History**

Omar Ibrahim ("Ibrahim") is currently incarcerated in Texas Department of Criminal Justice,

Correctional Institutions Division (TDCJ-CID), as a result of a 2014 murder conviction in the 178th

District Court of Harris County, Texas, cause no. 136213901010, for which he was sentenced to

ninety-nine (99) years imprisonment.  Ibrahim was charged by indictment with that offense on

December 4, 2012,  with the Indictment alleging:

> . . . OMAR IBRAHIM, hereafter styled the Defendant, heretofore on or about
> SEPTEMBER 17, 2012, did then and there unlawfully, intentionally and knowingly
> cause the death of ADRIAN CASTRO, hereinafter called the Complaint, by
> STRANGULATION AND BLUNT FORCE TRAUMA TO THE HEAD.
>
> It is further presented that in Harris County, Texas, OMAR IBRAHIM,
> hereinafter styled the Defendant, heretofore on or about SEPTEMBER 17, 2012, did
> then and there unlawfully, intend to cause serious bodily injury to ADRIAN
> CASTRO, hereinafter called the Complainant, and did cause the death of the
> Complainant by intentionally and knowingly committing an act clearly dangerous to
> human life, namely BY STRANGULATION AND BLUNT FORCE TRAUMA TO
> THE HEAD.

Ibrahim pled not guilty and proceeded to trial.  On September 11, 2014, a jury found Ibrahim guilty,

and he was thereafter sentenced by the jury, following a punishment hearing, to ninety-nine years

incarceration.

Ibrahim appealed his conviction.  On June 28, 2016, Texas' First Court of Appeals affirmed

the conviction in an unpublished opinion. *Ibrahim v. State*, No. 01-14-00785-CR. Ibrahim's petition

for discretionary review was then refused by the Texas Court of Criminal Appeals on November 9,

2016. Ibrahim did not file a petition for writ of certiorari, and his conviction therefore became final

in February 2017.

On September 8, 2016, Ibrahim filed a state application for writ of habeas corpus.  That

application was dismissed on November 1, 2016, because Ibrahim's conviction was not yet final.

Ibrahim's second state application for writ of habeas corpus, filed on July 11, 2017, was dismissed without adjudication on November 22, 2017, after Ibrahim had filed a motion to withdraw that application. Ibrahim's third state application for writ of habeas corpus, filed by Ibrahim on March 28, 2018, was denied by the Texas Court of Criminal Appeals on February 13, 2019, on the findings of the trial court without a hearing. This § 2254 proceeding was then filed by Ibrahim, on February 22, 2019.

## II. **Factual Background**

The factual background, set forth by Texas' First Court of Appeals in affirming Ibrahim's conviction, is as follows:

> The complainant, Adrian Castro, had been friends with Omar Ibrahim for roughly a year before his death. The two sent each other several Facebook messages that indicated a romantic relationship between them, including some that were "sexual in nature." At trial, Ibrahim claimed that he was not attracted to men and that these messages were not intended in a sexual manner but rather reflected his limited understanding of American culture as an Iraqi immigrant.

> One evening, Castro, Ibrahim, and a few friends went out together. Castro had several drinks, while Ibrahim abstained because he did not drink alcohol. The group returned to Castro's apartment, and Ibrahim stayed the night after the others left.

> According to Ibrahim, when he awoke on the couch, Castro was standing over him in his underwear. Castro's penis was "touching [Ibrahim's] hands" and close to Ibrahim's face. Ibrahim felt threatened that Castro would sexually assault him. Ibrahim grabbed a knife and told Castro to stay back. Castro continued to try to assault him, and he "ran into" Ibrahim's knife. Castro took a fire extinguisher from the wall and struck Ibrahim twice with it. Ibrahim managed to seize the extinguisher and hit Castro in the head twice in return. Finding himself wrestled to the ground, Ibrahim claimed he had to choke Castro to death in order to defend himself.

> Ibrahim covered Castro's body in several sheets and blankets, tying the bundle together with a number of belts. A maintenance worker visited later that morning, and Ibrahim asked him to help load the bundle into a vehicle. The worker

3

became suspicious after he saw what appeared to be a bloodstain on the ground, and he left shortly thereafter. He testified that after hearing a loud noise, he found that the bundle had been moved back into the apartment. The worker told his supervisor about the incident, and the supervisor contacted the police.

The police discovered the bundle containing Castro's body inside his apartment. An investigator at the scene noted that there were no signs of a struggle having occurred in the apartment, and that several fragile objects in the area were entirely intact. Roughly six days after Castro's body was discovered, police apprehended Ibrahim at a relative's home in Idaho. At that time, Ibrahim had no apparent injuries on his face or arms.

During voir dire, counsel for both Ibrahim and the State discussed the law regarding self-defense. The prosecutor noted that a person was allowed to use deadly force in self-defense "to prevent the imminent commission of certain serious crimes" including sexual assault. The State also emphasized that reasonable belief that an assault was imminent was based on what a "reasonable person in the position of the defendant at the time he acted would believe." Ibrahim's trial counsel further explained the concept of imminent sexual assault, noting that when there is an imminent commission of rape even without its actual occurrence, there is a right to use deadly force in self defense.

At trial, Ibrahim testified to his version of the events leading up to Castro's death. He admitted that he killed Castro, but he asserted that it was self-defense because he felt he was about to be raped. Defense counsel also heavily emphasized the issue of self-defense in his closing argument, particularly touching upon the issue of imminent assault:

> This man– you or anybody in this room, we don't have to wait for a drunk person to take their penis and put it in their mouth, or to put it in their anus, or to stick it in their face. You don't have to wait for that. You can defend yourself before that happens. That's what this man did.

The State responded at length to the self-defense argument in its final closing statement:

> No sexual assault occurred that day. By the defendant's own statement, and by the defendant's own description of what happened, no sexual assault occurred that day. The description of sexual assault, the definition of it talked about penetration. No sexual assault occurred that day.
>
> The closest that it go to – again, according to what the

4

> defendant told you yesterday, was that the defendant – or the
> complainant's standing there with his penis out and touched him on
> the hand.  That is not sexual assault.
>
> And do you think that's how sexual assault occurs?
> Realistically, do you think that's how it occurs, that somebody's just
> going to stand there with their penis out and that's how the sexual
> assault begins?
>
> The defendant never said anything about the complainant
> holding him down.  The defendant never said anything about Adrian
> Castro trying to pull his pants down.  He never said anything about
> Adrian Castro trying to put his penis in his mouth.  He never said
> anything about Adrian Castro grabbing his genitals.   He did not
> provide one supporting fact to show that a sexual assault was
> imminent, period.  Not one.

Ibrahim's trial counsel did not object to this portion of the State's closing argument.

The jury charge contained the following instruction on the law of self-defense:

> A person is justified in using deadly force against another if
> he would be justified in using force against the other in the first place,
> as above set out, and when he reasonably believes that such deadly
> force is immediately necessary:
>
> (1) to protect himself against the other person's use or attempted use
> of unlawful deadly force, or
>
> (2) to prevent the other's imminent commission of sexual assault.

The defendant's belief that the force was immediately necessary is presumed to be reasonable if the defendant:

> (1) knew or had reason to know that the person against whom the force was
> used was committing or attempting to commit sexual assault . . .

The trial court submitted a special issue of whether the killing arose under the immediate influence of sudden passion arising from an adequate cause.  The jury returned a guilty verdict.  The jury also made a unanimous negative finding against the special issue and assessed punishment at 99 years in prison and a fine of $5,000. Ibrahim appealed.

*Ibrahim v. State*, No. 01-14-00785-CR at 2-6.

### III.   Claims

Ibrahim raises ineffective assistance of trial counsel claims and ineffective of appellate counsel claims, alleging that:

> 1.       trial counsel, Danny Easterling, was ineffective for: (a) failing to communicate the State's various plea offers; (b) failing to call Howaida Abdulkarim as a witness in connection with defendant's motion to suppress evidence; (c) failing to introduce defendant's mental health records at both the guilt-innocence and punishment stages; (d) failing to object to the prosecutor's misstatement of the law on sudden passion during the punishment stage; (e) conceding defendant's guilt and vouching for the State during the punishment stage; (f) failing to object to prosecutor's misstatement of the law on self-defense during closing argument at the guilt-innocence stage; and (g) failing to call an expert witness to testify about the decedent's consciousness; and
>
> 2.       appellate counsel, Marcus Fleming, was ineffective for: (a)  failing to challenge the trial court's jury instructions at the punishment stage; (b) failing to challenge the trial court's denial of defendant's motion to suppress; and (c) failing to challenge the trial court's denial of defendant's motion for a mistrial.

Respondent argues in the Motion for Summary Judgment that Ibrahim has not sufficiently exhausted his claim that trial counsel was ineffective for failing to communicate the State's various plea offers (claim 1(a)), and that the unexhausted portions of that claim are unexhausted and procedurally barred from review.   Respondent additionally argues that all Ibrahim's claims all fail on the merits under the standard of review set forth in § 2254(d).

### IV.   Standards of Review

#### A.      Exhaustion and related Procedural Bar

Federal habeas corpus petitioners are required to exhaust their available state law remedies. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993).  In order to exhaust state law remedies, Texas prisoners must fairly present their claims to the highest state court, the Texas Court of Criminal

Appeals, TEX. CODE CRIM. PROC. ANN. art. 44.45, through a petition for discretionary review and/or a state application for writ of habeas corpus. TEX. R. APP. P. 68; TEX. CODE CRIM. PROC. ANN. art. 11.07, et seq. "'It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'" *Ex Parte Wilder*, 274 F.3d 255, 259-260 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Rather, the petitioner must have presented the highest state court with the same claim, the same factual basis for the claim, and the same legal theory in order to meet the exhaustion requirement. *Id.* "[F]leeting reference to the federal constitution," especially when such reference is not accompanied by any federal case law authority, generally does not suffice to "alert and afford a state court the opportunity to address an alleged violation of federal rights," and that "vague references to such expansive concepts as due process and fair trial" in a state court proceeding will not satisfy the exhaustion requirement. *Id.* at 260.

When unexhausted claims are contained in a § 2254 application, and when such claims, if the petitioner tried to exhaust them in state court, "would be barred by the abuse-of-the-writ doctrine of Article 11.071 of the Texas Code of Criminal Procedure," the claims should be dismissed with prejudice as procedurally barred. *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999); *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("A procedural default also occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"), *cert. denied*, 523 U.S. 1139 (1998). Only when the petitioner makes a colorable showing that his unexhausted claims would be considered on the merits by the state courts if he attempted to exhaust them, should the claims be dismissed without prejudice. *Horsley*, 197

F.3d at 136-137.

**B.     Merits Review under § 2254(d)**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim

presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state

proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme]

Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the

relevant state-court decision.'"  *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting

*Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly

established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court]

cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*,

538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406).  A state court decision involves

an "unreasonable application of" clearly established federal law "if the state court identifies the

correct governing legal principle from the Supreme Court's decision but unreasonably applies that

8

principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "State-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). Similarly, state court decisions are reviewed under § 2254(d) by reference to the facts that were before the state court at the time. *Id.* ("It would be strange to ask federal courts to analyze whether a state court adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

For factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, factual determinations made by state courts carry a presumption of correctness and federal courts on habeas review are bound by them unless there is clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceeding. *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). This is true regardless of whether the state court rejected the claims summarily, or with a reasoned analysis. *Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial."). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted); *see also Price*, 538 U.S. at 641 ( "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*,

286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346

F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).  A habeas petitioner can only

overcome § 2254(d)'s bar "by showing that 'there was no reasonable basis'" for the state court's

rejection of his claim(s).  *Cullen*, 563 U.S. at 188 (quoting *Richter*, 562 U.S. at 98)).

## V.  Discussion – Exhaustion and Procedural Bar (Claim 1(a))

Respondent first argues that Ibrahim's claim that trial counsel was ineffective for failing to

communicate various plea offers to him (20 years and/or 30 years and/or 40 years) is unexhausted

insofar as Ibrahim only alleged in the state courts that trial counsel did not communicate or convey

a twenty (20) or thirty (30) year plea offer, and no mention was made of any other un-communicated

offers.  Because the factual allegations made by Ibrahim in support of this ineffectiveness claim were

not all included in the similar claim Ibrahim raised with the state courts, Respondent maintains that

this ineffectiveness claim is both unexhausted and procedurally barred from review.

In this § 2254 proceeding  Ibrahim alleges that "trial counsel, Mr. Danny Easterling, failed

to (1) communicate plea bargain offers that the State offered which was favorable to the petitioner

and that which the petitioner would have accepted.  the offers was 20 and or 30 and or 40 years

confinement (see Petitioner's Exhibit A which shows that there was an offer which the trial counsel

claimed he communicated it but he did not show any evidence that because he never did."

(Document No. 1 at 5).  In the state habeas proceeding, Ibrahim alleged as follows:

> Applicant's trial counsel failed to communicate formal plea bargain offer from the
> State a thirt[y] (30) years confinement and a (20) years confinement in return of
> guilty plea. . . . There was a reasonable probability that Applicant would have
> accepted the plea offer instead of going to trial. . . There was a reasonable probability
> that the judge would have accepted the plea and allowed Applicant to proceed with
> the plea and grant it."

*Ex Parte Ibrahim*, No. 85,929-03 at 0019.  Ibrahim's allegations in this § 2254 proceeding do not directly align with the allegations Ibrahim made in the state habeas proceeding.  That slight mis-alignment in the allegations as to the number of years of confinement offered as part of a plea offer does not render this ineffectiveness claim unexhausted.  For a claim to be exhausted, it must be "fairly presented" to the state courts.  Here, although Ibrahim made no mention of a plea offer of "40" years, he did allege in the state habeas proceeding, and has alleged here, that trial counsel did not communicate <u>any</u> plea offers to him.  That allegation was refuted by Ibrahim's trial counsel in an affidavit he filed in the state habeas proceeding.  *Id.* at 208 ("I communicated any plea bargain offer that the State presented which was always a large number of years in prison and my client never agreed to plead Guilty to any plea bargain.  My client insisted on having a jury trial and testifying that he acted in self defense.").  The state trial court specifically found that Easterling's affidavit was credible and that the facts set forth therein were "true."  *Id.* at 268.

Notwithstanding the absence of any mention or allegation by Ibrahim that there was an un-communicated plea offer of forty (40) years incarceration, the state court's findings of fact subsumed the claim Ibrahim has raised herein – that trial counsel failed to communication various plea offers, to him.  Ibrahim's first claim – that trial counsel was ineffective for failing to communicate various plea offers to him – has therefore been exhausted and is not subject to dismissal on that basis.

**VII.   Discussion – Merits Review**

Ibrahim alleges that both trial and appellate counsel were ineffective in various regards.  Each of these ineffectiveness claims was raised and rejected on the merits by the state courts in connection with Ibrahim's third state application for writ of habeas corpus, which was denied by the Texas

12

Court of Criminal Appeals on the findings of the state trial court without a hearing. Respondent maintains that the state courts' rejection of Ibrahim's ineffective assistance of counsel claims is not contrary to or based on an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence, and that no relief is therefore available to Ibrahim on the merits of any of those claims under § 2254(d). While Ibrahim argues in his "Traverse" to Respondent's Motion for Summary Judgment that there was no evidentiary hearing and that the state court should not have made any credibility findings relative to any disputed facts without an evidentiary hearing, these alleged infirmities in the state habeas proceeding are not independently cognizable in a § 2254 proceeding, *see Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001) ("'infirmities in state habeas proceedings do not constitute grounds for relief in federal court'") (quoting *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997)), *cert. denied*, 534 U.S. 1001 (2001), and they do not render § 2254(d)'s standard of review inapplicable, *Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001)("a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review").

The clearly established Federal Law applicable to claims of ineffective assistance of trial counsel is contained in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court determined that relief is available if a petitioner can show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency under *Strickland* is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378; *Cullen*, 131 S.Ct. at 1403 ("[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result") (quoting *Strickland*, 466 U.S. at 686)). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity

of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003).

When an ineffective assistance of counsel claim has been adjudicated on the merits by the state courts, federal habeas review is "doubly deferential," with the court taking a "highly deferential look at counsel's performance" under *Strickland*, and then imposing a second layer of deference under § 2254(d). *Cullen*, 131 S.Ct. at 1403. Under § 2254(d), therefore, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788. As for *Strickland's* prejudice prong, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 131 S.Ct. at 791. Instead, the question is whether "fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents. *Id.* at 786. If "'fairminded jurists could disagree' on the correctness of the state court's decision," § 2254(d)(1) precludes relief. *Id.* at 786. In contrast, where there is no "possibility that fairminded jurists could disagree" and fairminded jurists would uniformly conclude that the state court's decision is contrary to, or based on an unreasonable application of clearly established Federal law, relief is available under § 2254(d)(1). *Id.*

Claims of ineffective assistance of appellate counsel are generally assessed under the same

15

two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994).  With respect to *Strickland's* deficiency prong, however, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989).  Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose*, 141 F.Supp.2d at 704-705.  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  As for *Strickland's* prejudice prong, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001).

### A.    Trial Counsel

Ibrahim claims that trial counsel was ineffective for failing to communicate plea bargain offers, failing to call his aunt to testify in support of his motion to suppress certain cell phone evidence, failing to present his mental health records, failing to object to the prosecutor's misstatements of law about "sudden passion" and self-defense, failing to call a medical expert to testify, and for conceding his guilt and favorably commenting on the prosecution during the sentencing stage. The Texas Court of Criminal Appeals rejected each of these ineffectiveness claims on the lengthy and detailed findings of the state trial court.  Those findings, in pertinent part,  are as

16

follows:

> . . . The Court finds that Mr. Easterling's affidavit is credible and the facts asserted therein to be true.

* * *

> The Court finds that Ms. Abdulkarim's affidavit is not credible, including her allegation that she did not give the phone to the police officers. Mr. Easterling spoke with Ms. Abdulkarim prior to the suppression hearing, and she confirmed that she gave the phone to the police officers. Mr. Easterling determined that there was no need to present her testimony during the suppression hearing as there was no search issue to dispute with her testimony.

* * *

> The Court finds that [Ibrahim] fails to prove that the trial court would have believed that the cell phone belonged to [Ibrahim] and found that [Ibrahim] had standing to contest the search if Ms. Abdulkarim had testified during the suppression hearing that she, living in a different state from [Ibrahim] (and despite the officer's testimony, the decedent's friend's testimony, and the decedent's selfies on the phone), knew that the black iPhone with which [Ibrahim] fled was [Ibrahim's] property.

* * *

> The Court finds that [Ibrahim] fails to prove that Mr. Easterling failed "to communicate formal plea bargain offer from the State a thirt[sic] (30) years confinement and a (20) years confinement. Mr. Easterling avows that he communicated all of the State's plea offers to [Ibrahim], and [Ibrahim] was insistent on proceeding to trial to present his self-defense claim. [Ibrahim] fails to prove that the State ever offered 30 years and 20 years, 30 years, or 20 years. Moreover, it appears that [Ibrahim] complains of a "formal plea bargain offer" never being presented in writing to [him], which is not a requirements and in no way indicates that Mr. Easterling was deficient.

* * *

> The Court finds that [Ibrahim] fails to prove that Mr. Easterling was deficient for failing to present [Ibrahim's] mental health records in support of [Ibrahim's] defense. Mr. Easterling avers that [Ibrahim] never exhibited any signs of mental illness and never claimed any prior mental illness. Moreover, assuming arguendo that [Ibrahim] suffered from depression and was using prescription medication, [Ibrahim] fails to prove that there is a reasonable probability that the results of the proceeding would have been different if Mr. Easterling had presented that information to the jury.

17

* * *

The Court finds that [Ibrahim] fails to prove that Mr. Easterling was deficient for failing to object to the prosecutor's misstatement of the law of sudden passion during the State's closing argument in the punishment phase.

* * *

The Court finds that [Ibrahim] fails to prove that Mr. Easterling was deficient for "vouching for the prosecutor's [sic] and conceding [Ibrahim's] guilt and strengthening the prosecution's case." It appears [Ibrahim] might be referring to Mr. Easterling stating, "[The prosecutor] did a great argument yesterday about how [Ibrahim] took it too far with the strangulation, that there was other action, other physical conduct with the fight that ended up on the floor." At this point, the jury had rejected [Ibrahim's] self-defense claim and convicted him of murder after presumably finding [Ibrahim's] testimony not credible and giving credence to the prosecutor's case. Mr. Easterling refers to the prosecutor's assertions that [Ibrahim] "took it too far" and then parlays those "unusual circumstances" into support for a sudden passion finding in mitigation of [Ibrahim's] punishment. [Ibrahim] fails to overcome the strong presumption that all of Mr. Easterling's actions were reasonable and based on sound trial strategy. [Ibrahim] fails to prove that there is a reasonable probability that the result of the proceeding would have been different if Mr. Easterling had not made those statements to the jury.

* * *

The Court finds that [Ibrahim] fails to prove that Mr. Easterling was deficient for failing to call an expert witness to testify that the decedent was conscious up until the point [Ibrahim] strangled him. The State's expert testified that the amount of injury the decedent sustained from the blunt force trauma impacts associated with hemorrhaging *could have* resulted in the loss of total consciousness. Mr. Easterling confirmed on cross-examination that, despite his head and brain injuries, the decedent "could still be conscious and could still be moving." [Ibrahim] fails to overcome the strong presumption that all of Mr. Easterling's actions were reasonable and based on sound trial strategy. [Ibrahim] also fails to prove that another expert would have been willing and able to testify that the decedent was conscious up until the point that [Ibrahim] strangled him and fails to prove that there is a reasonable probability that the result of the proceeding would have been different if Mr. Easterling had presented that testimony to the jury.

*Ex Parte Ibrahim*, No. 85,929-03 at 268-277 (internal references omitted).

### 1.   Communicating/Conveying Plea Offers

In his first claim, Ibrahim maintains that his trial counsel did not communicate various plea offers to him – plea offers that ranged from 20-40 years incarceration.  The state courts rejected this ineffectiveness claim based on the contents of trial counsel's affidavit, which were found to be true. In that affidavit, Easterling stated: "I communicated any plea bargain offer that the State presented which was always a larger number of years in prison and my client never agreed to plead Guilty to any plea bargain.  My client insisted on having a jury trial and testifying that he acted in self defense."  *Id* at 208.  Because the state courts' rejection of this ineffectiveness claim was based on the contents of Easterling's affidavit,  § 2254(d) only allows for relief if that state court finding relative to the contents of Easterling's affidavit was based on an unreasonable determination of the facts in light of the evidence presented in the state habeas proceeding.

A review of the evidence in the state habeas proceeding convinces the undersigned that the state court's finding that the contents of Easterling's affidavit were true is not based on an *unreasonable* determination of the facts in light of the evidence.  Against the contents of Easterling's affidavit was the affidavit of Ibrahim, in which he stated:

> During his representation of me Mr. Easterling never communicated any plea bargain offer that the State has made and I never signed any refusal to any plea offer.  I haven't received any legal paper, letter, or saw an actual plea bargain offer made by the States before or during the trial.  However, I was informed of them recently throughout my habeas corpus investigation and research.  I would have agreed to the State's plea offers if I had knowledge of them before the trial.  I did not insist on going to trial.

*Id.* at 232.  In a Supplemental Affidavit, Ibrahim further stated: "Mr. Danny Easterling never communicated any plea bargain offers made by the State to me ORALLY, IN WRITING, IN A SIGN LANGUAGE, OR IN ANY TYPE OF HUMAN MADE COMMUNICATION,  ONLINE, E-MAIL

NOTHING PERIOD." *Id.* at 254.  Given that there was *no* evidence in the state habeas record of any particular plea offer, and given Ibrahim's failure to refute that part of Easterling's affidavit in which he stated that Ibrahim insisted on pursuing a self-defense strategy, it was not unreasonable for the state courts to accept the statements in Easterling's affidavit over the statements in Ibrahim's affidavit(s).  As such, the state courts' rejection of this ineffectiveness claim was not based on an unreasonable determination of the facts in light of the evidence presented, and no relief is available on this clam under § 2254(d)(2).

### 2.    Howaida Abdulkarim

Ibrahim next complains that trial counsel was ineffective for failing to call his aunt, Howaida Abdulkarim, as a witness during the hearing on his motion to suppress evidence of the iPhone and its contents.  According to Ibrahim, his aunt, Ms. Abdulkarim, could have testified at the suppression hearing that the iPhone belonged to him (Ibrahim), thereby providing Ibrahim with standing to challenge the search and seizure of the iPhone.  The state courts rejected this ineffectiveness claim, finding that trial counsel had no basis for calling Howaida Abdulkarim as a witness during the suppression hearing (*Strickland* deficiency), and no likelihood that the result of the suppression hearing would have been different (*Strickland* prejudice).  Those determinations are not contrary to or based on an unreasonable application of *Strickland*, nor are they based on an unreasonable determination of the facts in light of the evidence presented in the state habeas proceeding.

The record shows that trial counsel filed a pretrial Motion to Suppress, seeking to suppress "allegedly incriminating evidence [that] was seized as a result of an illegal search".  *Ex Parte Ibrahim*, No. 85,929-03 at 168.  At the hearing on the motion to suppress, it became clear that it was the contents of an iPhone that Ibrahim wanted to suppress, which iPhone the State maintained

belonged to the decedent and the search of which the State maintained Ibrahim had no standing to challenge.  In support of its position that the iPhone belonged to the decedent, the State called Juan Galindo, who testified that he had sent the decedent messages which were on the iPhone seized from Ibrahim during and in relation to his arrest.  Trial Transcript, Vol. IV, at 17-25.  The State also called Mark Condon, a Houston Police Officer, who testified that he traveled to Idaho after Ibrahim had been arrested there and was told that upon Ibrahim's arrest, his aunt "walked up and handed then [the arresting officers] and iPhone," and said "it wasn't their phone." *Id.* at 33.  Condon also testified that there was nothing on the iPhone that led him to believe that the iPhone belonged to Ibrahim. *Id.* at 35.  Upon conclusion of the hearing on the motion to suppress, the trial court overruled trial counsel's objection to evidence obtained from the iPhone, and denied the motion to suppress, finding that Ibrahim had made no showing of any "standing to contest the search of the contents of that cell phone or the seizure of the cell phone itself." *Id.* at 45.

Ibrahim now, as he did in the state habeas proceeding, contends that his trial counsel should have called his aunt to testify about the iPhone.  According to Ibrahim, his aunt could have, and would have testified at the suppression hearing that the iPhone was Ibrahim's and that it was taken by the arresting officers from her apartment without her consent.  In the affidavit filed in the state habeas proceeding Adbulkarim stated:

> I used to live at 1060 S. Leadville Apt #26, Boise, Idaho 83706 during and at that [sic] time of the arrest of Omar Ibrahim on or about 9/21/2012.  During the incident I was outside my apartment looking right at the Officers and Omar.  A U.S. Marshal ran into my apartment without my consent I didn't know what was going on or why Omar was arrested.  Omar was staying at my apartment when he arrived to Boise, almost a day and a half before he got arrested he has his property with him two bags and one back bag, his cell phone (a black iPhone) and an iPod.  The U.S. Marshal Officer stated that he was looking for Omar's property then he grabbed Omar's iPhone that was on the counter by the living room and the kitchen inside my apartment without my consent or a warrant he took the iPhone then the Marshal just

21

left. I asked him "What's going on?" and he replied "Ask Omar". I did not give the officer my consent to enter my apartment nor to take Omar's cell phone (the black iPhone). I was told that the police officer, Mr. Condon, testified that I handed Omar's cell phone to the arresting officer saying it wasn't mine. This is not true. I didn't hand the iPhone to the Marshal or any police officer. The Marshal simply took it from my apartment without my consent or a warrant.

*Ex Parte Ibrahim*, No. 85,929-03 at 73. The state trial court found that the contents of Abdulkarim's affidavit were not credible, and that they were contradicted by both the testimony at the suppression hearing, and the contents of Easterling's affidavit, in which he stated that he spoke with Abdulkarim and "[s]he confirmed with me what was written in the offense report that she gave [Ibrahim's] cell phone to the officers when they arrested [him]." *Id.* at 208. Upon this record, the state court's determination that Easterling had no basis for calling Abdulkarim as a witness during the suppression hearing was not contrary to or based on an unreasonable application of *Strickland*, nor was it based on an *unreasonable* determination of the facts in light of the evidence. As such, under § 2254(d), no relief is available to Ibrahim on this ineffectiveness claim.

### 3.    Mental Health Records

Ibrahim next maintains that trial counsel was ineffective for failing to introduce his mental health records into evidence at both the guilt-innocence and punishment stages in an attempt to minimize or mitigate his culpability. Ibrahim did not submit in the state habeas proceeding, and has not submitted here, any mental health treatment or diagnoses. In addition, he has not even alleged with any particularity how any evidence of depression could have been used to mitigate his culpability – either during the guilt stage or the punishment stage. Moreover, Easterling stated in his affidavit, which the state courts found to be true, that Ibrahim exhibited no signs of mental illness, never claimed that he suffered from a mental illness, and had not been treated for any mental illness while he was in the Harris County jail prior to trial. *Ex Parte Ibrahim*, No. 85,929-03 at 208.

22

Upon this record, trial counsel had no basis for introducing any medical/mental health records into evidence.  The state courts' rejection of this claim is therefore not contrary to or based on an unreasonable application of *Strickland*, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state habeas proceeding.  Under § 2254(d), no relief is available on this ineffectiveness claim.

### 4.    Sudden Passion argument by the prosecutor

Ibrahim next claims that trial counsel was ineffective for failing to object to the improper and inaccurate argument of the prosecutor during the punishment stage on sudden passion.  According to Ibrahim, the following statements/argument by the prosecutor were improper:

> And now this is not a case – and we're talking about sudden passion, we're talking about somebody reacting to a provocation.  And I want to remind you, this is not one single split second where the defendant made a choice, like pulling a trigger on a gun.  This was a man who systematically beat and strangled another human being to death.
>
> There was plenty of time to stop after the first strike, after the second, after the third, after the fourth, after Mr. Castro was unconscious.  He didn't have to strangle him to death.
>
> I certainly hope in my heart of hearts that Adrian Castro was unconscious.
>
> * * *
>
> Another thing you need to consider when you consider sudden passion is he lack of remorse showed by this man, that day that he killed Adrian Castro ans when he took the stand.  He didn't show any more remorse when he testified about killing Adrian Castro than he did the morning that he killed Adrian Castro and was playing on Facebook. . . .

Trial Transcript, Vol. VIII, at 17,  22.  The state courts rejected this ineffectiveness claim, finding that the complained of argument by the prosecutor was proper.  *Ex Parte Ibrahim*, No. 85,929-03 at 274.  Given that determination as to the propriety of the prosecutor's argument, trial counsel had not viable basis for objecting to that argument, and cannot be found to have been deficient for failing

to do so. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). The state courts' rejection of this ineffectiveness claim falls within the doubly deferential standard of § 2254(d).

### 5.      Counsel's argument at sentencing

Ibrahim next complains about his counsel's argument at the punishment stage, arguing that counsel should not have conceded his guilt and should not have complimented the prosecution's closing argument during the guilt stage. The state courts found the complained of statements of trial counsel fell within the wide range of trial strategy. *Ex Parte Ibrahim*, No. 85,929-03 at 275 ("[Ibrahim] fails to overcome the strong presumption that all of Mr. Easterling's actions were reasonable and based on sound trial strategy."). That adjudication of this ineffectiveness claim is not contrary to or based on an unreasonable application of *Strickland*.

During trial counsel's closing argument at the punishment stage, he made the following argument:

> Now, your verdict reflected that Mr. Ibrahim's conduct didn't meet self-defense, that however it happened in that apartment, it didn't rise to the level of each and every element, that it wasn't reasonable, conduct wasn't reasonable and he went too far, and that maybe he had other options.
>
> Mr. Calligan [the prosecutor] did a great argument yesterday about how he took it too far with the strangulation, that there was other action, other physical conduct with the fight that ended up on the floor. And I know y'all looked at that, and I know you talked about it back there. But there's – there's a compromise so to speak here. I don't know if that is the right word. But the legislature has given you as a juror another option to consider whenever there's unusual circumstances like this. And it's called the sudden passion special issue.

Trial Transcript, Vol. VIII, at 10. As found by the Texas courts, this argument – even the compliment to the prosecution -- was a matter of trial strategy, designed to bridge the divide between the jury's rejection of Ibrahim's claim of self-defense during the guilt-innocence stage, and

its consideration of sudden passion as a mitigating factor at punishment.   Trial counsel's

acknowledgment in his argument that the jury had rejected Ibrahim's self-defense claim and had,

apparently, agreed with the prosecution's argument that Ibrahim took the fight "too far," was not

designed to, nor is there any reasonable likelihood that it did,  sway the jury against Ibrahim during

the punishment stage.   Because trial counsel's argument *Strickland's* deferential standard, no relief

is available to Ibrahim on this ineffectiveness claim under § 2254(d).

### 6.   Self-defense argument by the prosecutor

Ibrahim next complains that trial counsel should have objected to the improper and inaccurate

argument of the prosecutor during the guilt-innocence stage about self-defense.   According to

Ibrahim, the prosecutor mis-stated the law on self defense by arguing or suggesting that self-defense

did not apply to counter an intended sexual assault.   This exact ineffectiveness claim was raised by

Ibrahim in his direct appeal.   In rejecting the claim, Texas' Court of Appeals cited to and relied upon

the *Strickland* standard, and concluded, as follows, that counsel's performance in this regard was not

deficient:

> . . . Ibrahim argues that his trial counsel was ineffective because he did not object to
> the State's remarks during closing argument regarding sexual assault and self-
> defense. Ibrahim asserts that the State misstated the law regarding self-defense when
> the prosecutor stated in closing argument: "The description of sexual assault, the
> definition of it talked about penetration.  No sexual assault occurred that day." He
> claims this statement misled the jury to think that actual sexual assault had to occur
> before he would be justified in using deadly force in self-defense.  Ibrahim asserts
> that trial counsel's failure to object was deficient performance, and that had the
> objection been made the jury would not have been misled and he would have been
> acquitted.   The States responds that the prosecutor's comments were not
> objectionable and that no prejudice could have occurred from the remarks.
>
> * * *
>
> Ibrahim argues that the State misstated the law in its closing argument and
> indicated that actual sexual assault rather than its mere imminent commission was

necessary for a viable claim of self-defense. However, when placed in context, the prosecution merely began by establishing a lack of actual sexual assault before proceeding to attack Ibrahim's argument regarding imminence. The prosecution's statement that "No sexual assault occurred that day" was a reasonable deduction from the evidence. *See Brown*, 270 S.W.3d at 570. Immediately after this, the State answered opposing counsel's argument regarding imminence, claiming that Ibrahim "did not provide one supporting fact to show that a sexual assault was imminent, period. Not one." Rather than misleading the jury as to the applicable law, the State's closing argument addressed the possibility of self-defense in the event of either actual sexual assault or imminent sexual assault.

We cannot conclude that trial counsel's performance was deficient because of his failure to object to the prosecution's permissible argument. Rather than conduct that was "so outrageous that no competent attorney would have engaged in it," trial counsel's decision not to object was supported by the applicable law regarding proper argument. *Goodspeed*, 187 S.W.3d at 392; *see Brown*, 270 S.W.3d at 570.

*Ibrahim v. State*, No. 01-14-00785-CR at 6, 9.

That adjudication of this ineffectiveness claim[1] was not contrary to or based on an unreasonable application of *Strickland*. The Texas courts, by reference to Texas law on self-defense and proper argument, concluded that the prosecutor's argument was not objectionable. Having determined that such an objection was not viable, the subsequent determination that counsel's performance was not unreasonable renders this ineffectiveness claim meritless in this proceeding under § 2254(d).

### 7.    Expert testimony

In his final ineffective assistance of trial counsel claim, Ibrahim faults counsel for not offering expert testimony on whether the decedent was, or was not, conscious at _the time Ibrahim

---

[1] The Texas Court of Criminal Appeals' denial of Ibrahim's Petition for Discretionary Review is viewed as having been based on the same reasons set forth by the Texas Court of Appeals in affirming Ibrahim's conviction, including those related to this ineffectiveness claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

strangled him. According to Ibrahim, such expert testimony was needed to further his defense of self-defense and refute the prosecutor's claim that Ibrahim continued to inflict harm on the decedent after he had lost consciousness.

The Texas courts' rejection of this ineffectiveness claim was two-fold: first, the Texas courts concluded that Ibrahim had not overcome the strong presumption that Easterling's actions were the basis of sound trial strategy; second, the Texas courts concluded that Ibrahim failed to prove that "another expert would have been willing to testify that the decedent was conscious up until the point that [Ibrahim] strangled him." That rejection of this ineffectiveness claim is not contrary to or based on an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

In the state habeas proceeding, Ibrahim also alleged that counsel should have offered expert medical testimony on whether the decedent was conscious, but he offered no evidence in the state habeas proceeding that a medical expert would have so testified. Ibrahim's submission in this § 2254 proceeding of an affidavit from Dr. Harry J. Bonnell, dated May 15, 2019, does not call into question the state courts' rejection of this ineffectiveness claim because that affidavit was not submitted in the state habeas proceeding. Its submission now is of no consequence, *see* § 2254(e)(2), and cannot be used to override the factual basis upon which the state courts' adjudication of this ineffectiveness claim was based.

Because the record fully supports the Texas' courts' determination that Ibrahim had not proven that "another expert would have been willing to testify that the decedent was conscious up until the point that [Ibrahim] strangled him," § 2254(d) precludes any relief for Ibrahim on this claim.

B.    **Appellate Counsel**

Ibrahim also claims that appellate counsel was ineffective and should have raised three additional issues on appeal: (1) that the trial court erred in instructing the jury at the punishment stage that the sudden passion issue had been requested by Ibrahim; (2) that the trial court erred when it denied his motion to suppress the cell phone evidence; and (3) that the trial court erred when it denied his motion for a mistrial after his objections to the prosecutor's inflammatory statement(s) during closing were sustained.   The Texas Court of Criminal Appeals rejected each of these ineffective assistance of appellate counsel claims, finding that Ibrahim had failed to provide that appellate counsel's decision not to raise any of these three claims was objectively unreasonable. With respect to the claim that appellate counsel should have complained about the trial court informing the jury that the sudden passion issue had been requested by Ibrahim, the state courts concluded that the trial court had not informed the jury of the request, and only mentioned it outside the presence of the jury. *Ex Parte Ibrahim*, No. 85,929-03 at 281.  With respect to the claim that appellate counsel should have challenged the trial court's denial of his Motion to Suppress, the state courts rejected that claim by reference to the testimony at the suppression hearing which "supported the trial court's ruling that there was no showing of standing" and the fact that appellate courts give deference to a trial court's findings on a motion to suppress. *Id.* at 278.  Finally, with respect to the claim that appellate counsel should have challenged the trial court's denial of the motion for mistrial, which was made after the trial court sustained objections to the prosecutor's statement at the punishment hearing that, " I certainly hope in my heart of hearts that Adrian Castro was unconscious," the state courts concluded that because the jury was instructed to disregard the objectionable argument of counsel, and because that comment was brief, Ibrahim had failed to show

how he was prejudiced. *Id.* at 285-86.

None of these ineffectiveness claims warrant any relief under § 2254(d). It is for appellate counsel to decide, as a matter of strategy, which issues to raise on appeal, and appellate counsel can only be found deficient if issues that were not raised are clearly and unequivocally more meritorious than the issues that were raised. Here, for the reasons set forth by the state courts, appellate counsel was not deficient within the meaning of *Strickland* insofar as none of the claims Ibrahim believes should have been raised on appeal had any reasonable likelihood of yielding a different result. The state courts' adjudication of Ibrahim's ineffective assistance of appellate counsel claims therefore fail under § 2254(d).

## VIII.   Conclusion and Recommendation

Based on the foregoing and the conclusion that no relief is available to Ibrahim on the merits of any of his ineffectiveness claims, the Magistrate Judge RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 11) be GRANTED, that Petitioner's Application for Writ of Habeas Corpus (Document No. 1) be DENIED and that this § 2254 proceeding be DISMISSED WITH PREJUDICE on the merits.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d

404, 408 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the

fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass*

*v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any

written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 5th day of December, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE